IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERCEPT PHARMACEUTICALS, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   Civil Action No. 14-1313-RGA |
| | : |
| STEFANO FIORUCCI, | : |
| | : |
| Defendant. | : |

MEMORANDUM ORDER

On October 15, 2014, Plaintiff Intercept Pharmaceuticals, Inc. filed a three-count

Complaint against Defendant Stefano Fiorucci. (D.I. 1). Plaintiff's Complaint seeks a

declaratory judgment that Defendant is not an inventor of a specific subset of Plaintiff's patents

("the Intercept-Pellicari patents"). (*Id.* at 12–13). Plaintiff also seeks equitable relief, alleging

that Defendant breached various patent assignment clauses—in the Sponsored Research

Agreements ("SRAs"), Consulting Agreements ("CAs"), and the Termination Agreement

between the parties—by failing to formalize the assignment of various other patents for which he

is indisputably a named inventor. (*Id.* at 13–14). On December 15, 2015, Defendant informed

Plaintiff of his intent to "auction his interest in [the various disputed patents] to third parties,

whatever his interest may be," despite acknowledging that "title to these patents may not be

clear . . . ." (D.I. 40-1 at 112–13). Presently before the Court is Plaintiff's Motion for a

Temporary Restraining Order ("TRO"). (D.I. 38). The motion is fully briefed. (D.I. 39, 42, 53).

For the reasons that follow, the Court will deny Plaintiff's motion for injunctive relief.

Pursuant to 35 U.S.C. § 283, a court in a patent case "may grant injunctions in

accordance with the principles of equity to prevent the violation of any right secured by patent,

1

on such terms as the court deems reasonable." 35 U.S.C. § 283. The Federal Circuit has "cautioned, however, that a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). The Federal Circuit has held that "[a]lthough state law governs the interpretation of contracts generally, the question of whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is intimately bound up with the question of standing in patent cases." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (citation omitted). Accordingly, it has treated the interpretation of patent assignment clauses "as a matter of federal law." *Id.*

"A request for a TRO is governed by the same general standards that govern the issuance of a preliminary injunction." *Takeda Pharm. USA, Inc. v. West-Ward Pharm. Corp.*, 2014 WL 5088690, at *1 (D. Del. Oct. 9, 2014). To demonstrate entitlement to injunctive relief, a movant must establish: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com, Inc., v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts . . . ." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). The Federal Circuit, however, has placed particular emphasis on the first two factors: "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com*, 239 F.3d at 1350 (emphasis in original). Accordingly, "[w]hile granting a preliminary injunction requires analysis of all four factors, a trial court may . . . deny a motion based on a patentee's failure to show any one of the four factors—especially either of the first

2

two—without analyzing the others." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002) (citation omitted); *see also Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990) ("If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.").

Regarding the first factor, likelihood of success on the merits, Plaintiff argues that it is likely to succeed on the issue of assignment rights because the plain language of the SRAs and CAs grants all patent rights to Plaintiff and requires Defendant to cooperate in executing any documentation necessary to perfect assignment. (D.I. 39 at pp. 11–12). Moreover, Plaintiff argues that Defendant cannot meet the high burden of demonstrating that he was an inventor of the Intercept-Pellicari Patents. (*Id.* at pp. 13–14). Defendant argues that the CA only created an obligation to assign patents, rather than an automatic assignment of legal title to future patents, and that his obligations under the CA ceased in 2007 when Plaintiff wrongfully terminated him.[1] (D.I. 42 at pp. 8–12). Alternatively, Defendant argues that Plaintiff is barred from enforcing its contractual rights by Delaware's three-year statute of limitations for breach of contract claims. (*Id.* at pp. 12–14). Defendant also asserts that, by the end of fact discovery, he will be able to better corroborate his claim that he was an inventor of the disputed patents. (*Id.* at pp. 14–15).

It appears to the Court that Plaintiff has a good case on the merits, at least with respect to the plain language of the assignment clauses in the CAs and SRAs, which would render Defendant's inventorship arguments irrelevant. Federal Circuit case law currently holds that:

> If an assignment of rights in an invention is made prior to the existence of the invention, this may be viewed as an assignment of an expectant interest. . . . Once the invention is made and an application for patent is filed, however, legal title to the rights accruing thereunder would be in the assignee . . . .

---

[1] Defendant also argues that he is not bound by the SRAs in his individual capacity, because he only signed them in his capacity as Principal Investigator on behalf of the University of Perugia. (D.I. 42 at pp. 11–12).

*Filmtec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991).[2]  The contract

language here appears to do exactly what is described in *Filmtec*: it assigns rights to inventions

not yet conceived.  (2006 CA, D.I. 44-1 at 30, § 4.1 ("Consultant hereby assigns to the Company

all Inventions and any and all related patents . . . ."); 2006 SRA, D.I. 40-1 at 34, § 4.2 ("[T]he

Research Parties hereby assign to Sponsor all rights title and interest in and to all Research

Project Patent Rights and Research Project Technology upon creation, each such assignment to

be effective as of the date of creation.")).  Because I find, however, that Plaintiff has not shown

that it will suffer irreparable harm if a TRO is not granted, a fuller assessment of Plaintiff's

likelihood of success on the merits is not necessary in order to decide Plaintiff's motion.[3]  *See*

*Jack Guttman*, 302 F.3d at 1356; *see also Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974

(Fed. Cir. 1996) (explaining that "a trial court need not make a finding on a movant's likelihood

of success on the merits" if it finds in the non-movant's favor as to the irreparable harm prong).

    Plaintiff's sole argument that it will suffer irreparable harm is that Defendant's public

auction will suggest to shareholders and potential investors that there is a cloud over Plaintiff's

title to its most important patents, causing its stock price to drop.  (D.I. 39 at pp. 15–16).

Plaintiff cannot point to any case law, however, suggesting that a potential drop in stock price

---

[2] Three Supreme Court Justices have recently suggested that the Federal Circuit's *Filmtec* decision should be revisited. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 131 S. Ct. 2188, 2202–03 (2011) (Breyer, J., dissenting) ("It is unclear to me why, where the Bayh-Dole Act is at issue, we should prefer the Federal Circuit's *Filmtec* rule to the rule, of apparently much longer vintage, that would treat both agreements in this case as creating merely equitable rights."); *id.* at 2199 (Sotomayor, J., concurring) ("I share Justice Breyer's concerns as to the principles adopted by the Court of Appeals for the Federal Circuit in [*Filmtec*] . . . ."). This argument, however, was not squarely before the Court. More recently, the Federal Circuit held that it is "bound by *Filmtec*; [and] cannot overrule that holding without en banc action." *Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015). Moreover, the Federal Circuit subsequently denied a petition for rehearing en banc challenging the *Filmtec* rule in that case. *Shukh v. Seagate Tech., LLC*, No. 2014-1406, D.I. 118 (Fed. Cir. Dec. 17, 2015). Accordingly, until the issue is squarely addressed by the Supreme Court or an en banc panel of the Federal Circuit, this Court would still be bound to apply *Filmtec* in any merits determination.

[3] I recognize that the above merits discussion does not probe each and every one of the defenses raised by Defendant. I only intend the above discussion to be my initial observations of Plaintiff's case, rather than a complete merits analysis.

alone can meet the irreparable harm prong for injunctive relief. Plaintiff's present dispute with Defendant concerning these patents—this litigation—is public record and Plaintiff claims that its "SEC filings noted that [Defendant] has refused to execute assignment documents . . . ." (D.I. 53 at p. 9). I cannot conceive how the possibility that a company's stock price will drop due to an opposing litigant's public reassertion of his already-public litigation position creates a likelihood of irreparable harm justifying the "drastic and extraordinary remedy" of injunctive relief. *Intel Corp.*, 995 F.2d at 1568.

In effect, Defendant is seeking to sell his interest in a lawsuit by quitclaim deed, whatever the merits of that interest may be. Plaintiff's motion for a TRO effectively seeks to ensure that the lawsuit remains against this individual Defendant, rather than against a third-party purchaser of Defendant's purported rights. I do not think that having to enforce its patent rights against a third-party purchaser of Defendant's interest in these patents, rather than Defendant himself, would cause irreparable harm to Plaintiff. Plaintiff must make the same showing with regard to the assignment and inventorship of the patents, regardless of the identity of the Defendant.

With regard to the third and fourth factors in the injunctive relief calculus, the balance of hardships and the public interest, "a trial court need not make findings concerning the third and fourth factors if the moving party fails to establish either of the first two factors." *Polymer Techs.*, 103 F.3d at 973–74. Because Plaintiff has failed to meet its burden of showing irreparable harm, an analysis of the third and fourth factors is not necessary.

Plaintiff's Motion for a Temporary Restraining Order (D.I. 38) is **DENIED**.

It is SO ORDERED this *28* day of January, 2016.

_Richard G. Andrews_
United States District Judge

5